UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------

CITY OF NEW YORK,

                           Plaintiff,

-v-

ROBERT G. LOPEZ,

                           Defendant.

21-CV-7862 (JPO)

OPINION AND ORDER

------

J. PAUL OETKEN, District Judge:

      This is a trademark infringement and counterfeiting case brought by the City of New York (the "City") against Robert G. Lopez. It concerns Lopez's alleged sale of cannabis-themed retail goods that bear similarities to the City's trademarked logos. On December 21, 2021, the Court granted the City's motion for a preliminary injunction (ECF No. 44 ("PI Order")), which Lopez now moves to vacate (ECF Nos. 101, 102 ("Mem."), 103 ("Lopez Dec.")). The Court assumes familiarity with the factual and procedural history of the case, which it recites only as necessary to explain the decision to deny Lopez's motion.

**I.     Legal Standard**

      A preliminary injunction "is an equitable remedy issued under established principles which guide courts of equity . . . to maintain the *status quo* until there can be a hearing on the merits." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984) (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953)). "The decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005) (citing *Sierra Club*, 732 F.2d at 256). That discretion to modify reflects the reality that a preliminary injunction "is an ambulatory

1

remedy that marches along according to the nature of the proceeding" and "is executory and subject to adaption as events may shape the need, except where rights are fully accrued or facts are so nearly permanent as to be substantially impervious to change." *Sierra Club*, 732 F.2d at 256. That said, the party seeking to vacate a preliminary injunction bears the burden of establishing that such a remedy is warranted. *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 364 (S.D.N.Y. 2000). And when considering such a request, just like when considering a motion to issue a preliminary injunction, the Court may (and often must) rely on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The Court may thus consider all factual material in the record to determine whether, in its discretion, to issue or vacate preliminary injunctive relief. *See Mullins v. City of New York*, 626 F.3d 47, 51-52 (2d Cir. 2010).

## II.    Discussion

Lopez moves to "dissolve" the preliminary injunction in this case on the grounds that (1) the Court should have imposed a bond pursuant to Federal Rule of Civil Procedure 65(c); (2) he lacked notice of and thus had no opportunity to oppose the motion for a preliminary injunction; and (3) the injunction is no longer equitable in light of changed circumstances. Because dissolution is a particular remedy available to a party wrongfully restrained by a temporary restraining order, *see* Fed. R. Civ. P. 65(b)(4); *New York v. Trump*, 765 F. Supp. 3d 287, 291 (S.D.N.Y. 2025), the Court construes Lopez's motion as one to vacate the preliminary injunction pursuant to the Court's inherent equitable powers, *see New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-449, 2020 WL 9211146 (E.D.N.Y. Sept. 30, 2020) (Tomlinson, Mag. J.), *report and recommendation adopted*, 2021 WL 855939 (E.D.N.Y. Mar. 5, 2021) ("A trial court's power to modify an injunction, like the power over all its orders, is inherent. The Court has the equitable

discretion to vacate or modify an injunctive order." (citations omitted)).  The Court takes each of Lopez's arguments, so construed, in turn.

      A.      **Rule 65(c) Bond Requirement**

Lopez moves first to vacate the preliminary injunction on the ground that the Court's order failed to comply with Federal Rule of Civil Procedure 65(c).  That provision permits a district court to "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The Court originally concluded, in its discretion, that the case presented no need for a bond and dispensed with the requirement.  (PI Order at 12.)

"As a general matter, decisions resolving aspects of a case may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."  *Baliga v. Link Motion Inc.*, No. 18-CV-11642, 2022 WL 2531535, at *15 (S.D.N.Y. Mar. 9, 2022) (Freeman, Mag. J.), *report and recommendation adopted*, 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022) (quotation marks omitted).  That applies with equal force to orders issuing preliminary injunctions, which "should be modified only when [materially] changed circumstances demonstrate that continuance of the injunction is no longer justified [or] will work oppressively against the enjoined parties."  *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) (quotation marks omitted).  The Second Circuit "disapprove[s] [of] the practice of trying to relitigate on a fuller record preliminary injunction issues already decided."  *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1207 (2d Cir. 1970) (citing *Am. Optical Co. v. Rayex Corp.*, 394 F.2d 155 (2d Cir. 1968)).  The Court's prior determination—that, in its discretion, no

bond need be posted—thus should not be disturbed absent a change in circumstances or a clear error of law.

Neither is present here. Lopez does not explain why a change in circumstances warrants the imposition of a Rule 65(c) bond requirement. Of course, he does argue that he is suffering business losses as a result of the preliminary injunction that warrant its dissolution, and the Court will proceed to that argument in due course. But that does not affect the Court's decision not to require the City to post a bond in order for the preliminary injunction to issue. Nor has there been an intervening change in law. To the contrary, several decisions since the Court's PI Order have reaffirmed the basic principle that district courts have broad discretion under Rule 65(c) to dispense with the bond requirement. *See, e.g.*, *Gov. Emps. Ins. Co. v. Innovation Anesthesia & Pain Servs., P.C.*, No. 24-CV-2220, 2025 WL 917509, at *16 (E.D.N.Y. Mar. 25, 2025) ("Because Plaintiffs have established a likelihood of harm, a stay is unlikely to prejudice Defendants, and Defendants may readily collect damages from Plaintiffs, the Court declines to require Plaintiffs to post a bond."); *G.F.F. v. Trump*, --- F. Supp. 3d ---, ---, No. 25-CV-2886, 2025 WL 1301052, at *11 (S.D.N.Y. May 6, 2025) (noting district courts' "wide discretion" to dispense with the Rule 65(c) bond requirement); *Cleer LLC v. Stranger*, No. 24-CV-1496, 2025 WL 1447450, at *16 (D. Conn. Mar. 20, 2025) (Garcia, Mag. J.) ("The Court in its discretion finds that no bond is warranted in light of the overwhelming evidence submitted at the hearing in Plaintiff's favor and Stranger's continuing violation of the TRO, for good cause shown pursuant to Fed. R. Civ. P. 65(c)."); *Widakuswara v. Lake*, --- F. Supp. 3d ---, ---, No. 25-CV-2390, 2025 WL 945869, at *11 (S.D.N.Y. Mar. 28, 2025) (declining to impose a bond pursuant to Rule 65(c) where it would unduly burden plaintiffs' vindication of their "statutory rights").

Those cases also underscore why there is no clear (or any) error with the Court's PI Order, as it was a proper exercise of discretion not to require the City to post a bond by making a finding on the record that none was needed. *See Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) for the proposition that district courts have "wide discretion . . . to dispense with the bond requirement where there has been no proof of likelihood of harm," so long as the court makes such a determination before entering a preliminary injunction). Here, Lopez made no showing of harm at the time the Court's PI Order issued, including during a hearing when asked specifically whether he had any reason that the injunction should not issue. (*See* ECF No. 47 ("Hrg. Tr.").) Moreover, the City established a clear likelihood of irreparable harm, in violation of its statutory rights, from the ongoing infringement of its marks. (*Id.*) And Lopez has not at any time raised fears about his ability to recover against the City for wrongful restraint in the event he ultimately succeeds, which is the concern the Second Circuit has recognized undergirds the Rule 65(c) requirement. *See U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 142 (2d Cir. 2014) ("[T]he security requirement enables the defendant to recover costs and damages without regard to the possible insolvency of the plaintiff . . . ." (cleaned up)). For all of those reasons, Lopez's arguments regarding Rule 65(c) present no basis to vacate the preliminary injunction.

  **B.**   **Opportunity to Oppose the Preliminary Injunction**

Next, Lopez argues in his declaration that he "never had an opportunity to formally oppose Plaintiff City of New York's motion for a preliminary injunction as [he] never received a copy of Plaintiff's Motion for a Preliminary Injunction that was allegedly served on [him] via email." (Lopez Dec. ¶ 19.) But that contention is directly refuted by the record and Lopez's own representations. For example, during the preliminary injunction hearing, he conceded that he had access to PACER and could obtain documents electronically (Hrg. Tr. at 3:14-3:21). At

the same hearing, when asked whether he had any reason to oppose the issuance of a preliminary injunction, Lopez explained that his arguments were the same as those included in his motion to dismiss (*id.* at 3:22-5:7), which the Court considered in ruling on the motion for a preliminary injunction (*see* PI Order at 2). Finally, counsel for the City represented that Lopez was served with copies of the preliminary injunction papers in person and to his several email addresses (Hrg. Tr. at 6:13-7:3), and Lopez even included a photo of Mr. Singleton effectuating service (ECF No. 17 at 2; *see also* ECF No. 14 (affidavit of service); Minute Entry Dated November 3, 2021 (mailing receipt of Order setting Lopez's deadline to respond to the motion for a preliminary injunction)). His argument that he had no notice of or opportunity to oppose the motion is thus unambiguously refuted by the record and presents no basis to vacate the preliminary injunction.

### C.     Equities of Continuing to Enforce the Preliminary Injunction

Last, Lopez makes a series of arguments contending that enforcing the preliminary injunction is no longer equitable, as "[t]he circumstances that justified the preliminary injunction three [] years ago have materially changed, and Plaintiff has not shown any ongoing harm warranting the injunction's continuation." (*See* Mem. at 2-4.) He argues, also, that the City is responsible for delays in the progress of the case, which should prevent it from seeking to continue to benefit from the preliminary injunction. (*See id.* at 4.)

To begin, Lopez argues that "[t]he prolonge[d] duration of the injunction without resolution has resulted in significant and extreme prejudice to Defendant's business operations and infringes on Defendant's ability to use and promote his stylized . . . mark in connection with any goods and/or services at all, even services that do not conflict with any of Plaintiff City of New York's current or existing trademark or service mark registrations." (Mem. at 2.) But that is directly undercut by Lopez's later contention, in the same filing, that the preliminary

6

injunction is no longer warranted "since Defendant no longer sells or offers for sale any clothing items or related accessory items under his stylized . . . mark, the main related (clothing) products that were the focal point of the issued injunction." (Mem. at 3.) If it is true that the preliminary injunction is no longer warranted because Lopez has exited the business of selling the allegedly infringing goods at issue, then there would be no reason that his business is suffering losses as a result of the preliminary injunction staying in place. And if Lopez plans to return to selling allegedly infringing goods upon vacatur of the preliminary injunction, then that is all the more reason to keep it in place, for compliance with a temporary remedy is hardly the type of changed circumstance that warrants vacating the remedy. Despite that apparent contradiction, however, Lopez still maintains that he has "lost revenue in an estimated range of at least $100 million dollars." (Lopez Dec. ¶ 34.) But he supplies no proof of that figure, which appears implausible, especially in light of Lopez's own admission that the entire cannabis industry in New York generated only "$137 million in retail sales in fiscal year 2023." (*Id.* ¶ 35.) Thus, Lopez has not demonstrated that the continuing enforcement of the preliminary injunction will prejudice him or cause him business losses that render the remedy inequitable.

  That leaves his argument that the City has delayed the progress of this case so significantly that it is no longer entitled to the protection of the preliminary injunction. (Mem. at 3-4.) Importantly, though, this is not a case in which a plaintiff waited too long to seek the preliminary injunction in the first instance, undercutting her claim for irreparable harm. *Cf. Harrison v. Local One, Int'l Union of Elevator Constructors of N.Y. & N.J., AFL-CIO*, No. 24-CV-8619, 2025 WL 1013391, at *9-10 (E.D.N.Y. Apr. 5, 2025) (collecting cases denying preliminary injunctions based on the plaintiff's delay in seeking the remedy). Indeed, Lopez does not contest that the City acted diligently to secure the preliminary injunction. Instead,

Lopez argues that the City has subsequently delayed the progress of the case and reaped the benefits of the preliminary relief in the meantime. The record demonstrates otherwise.

On December 21, 2021, the Court issued the preliminary injunction. (PI Order.) The parties spent the early part of 2022 briefing the City's motion for a default judgment (including four separate declarations filed by Lopez), as well as whether the Court should hold oral argument on the motion. (*See* ECF Nos. 49, 51, 52, 55, 57, 58, 59, 60, 62, 64, 66, 67, 68, 69, 71.) The matter was also delayed from January 2022 to May 2022 while Lopez pursued an appeal to the United States Court of Appeals for the Second Circuit, which was ultimately dismissed for his failure to file a required form. (*See* ECF Nos. 61, 73.) On September 22, 2022, the Court denied the City's motion for a default judgment and granted Lopez's motion to set aside the default. (ECF NO. 76 at 6.) Shortly thereafter, Lopez filed counterclaims, including for abuse of process (ECF No. 77 at 16-22) and the City filed a motion to dismiss (ECF Nos. 78 and 79), which Lopez failed to oppose even after a warning (ECF No. 81). On August 9, 2023, the Court granted the City's motion, concluding that Lopez's counterclaims failed to state a plausible claim for relief, and set a conference for September 12, 2023. (ECF No. 82.) That conference was rescheduled to October 19, 2023, at Lopez's request. (*See* ECF No. 87.)

Thereafter, the case was referred to Magistrate Judge Ona T. Wang to conduct general pretrial matters. (ECF No. 89.) The docket then went silent for a year, until Magistrate Judge Wang requested status updates from the parties on October 10, 2024. (ECF No. 91.) Lopez responded first, representing that "little to no action has occurred" since October 2023 and discussing several other actions that he has commenced in the meantime. (ECF No. 95.) In its letter, the City indicates that it attempted to settle the matter in September 2023, and that when that was unsuccessful, it waited until March 27, 2024 to request Lopez's availability for a

deposition, despite no discovery scheduling order having issued. (ECF No. 93 at 2-3.) Apparently, no discovery or other pretrial matters took place between March and October 2024. However, the City did note that its timing was impacted by Lopez's filing of forty-five related trademark infringement actions in this District, as well as several administrative proceedings to cancel the City's trademarks and one civil action against the City's counsel personally. (*Id.* at 3.) On October 30, 2024, Lopez filed the present motion, and briefing followed. (ECF Nos. 101, 102, 109, 116.) The parties also began discovery—though not without several additional disagreements—after appearing at a conference before Magistrate Judge Wang. (*See* ECF Nos. 110, 119, 121.) Then, on February 26, 2025, the City filed a motion for an extension of the time to complete discovery, in its view, "based on [Lopez's] unavailability and the pendency of several motions that remain to be decided." (ECF Nos. 127, 129.) In ruling on that request, as well as the other outstanding motions, Magistrate Judge Wang concluded that discovery had "come to a halt" due to Lopez's nonresponsiveness to the City's document requests, afforded Lopez "one last opportunity to clarify his answers," and extended the time to complete discovery. (ECF No. 131 at 3-5.) The parties then jointly moved for an extension of the time to complete fact discovery on March 25, 2025 (ECF No. 133), which Magistrate Judge Wang granted (ECF No. 135).

       It is obvious that this case has progressed slowly, most notably in the year between October 2023 and October 2024. But, also during that year, the City attempted to secure Lopez's attendance at a deposition, tried to settle the case, and also found itself defending dozens of other related actions—at least one against the City's counsel individually. And at other points in this litigation, Lopez himself has been directly responsible for delays, such as failing to respond to motions, asking to delay conferences, filing interlocutory appeals only to fail to comply with

procedural requirements, and failing to supply documents in response to the City's discovery requests. Ultimately, it is not necessary for the Court to determine the reasons for all of those delays, or for the generally stilted progress of this case, in spite of Magistrate Judge Wang's commendable efforts to move things along. It is instead sufficient to find that the City has not delayed this litigation so significantly as to render inequitable the continued enforcement of the preliminary injunction.

### III. Conclusion

For the foregoing reasons, Lopez's motion to dissolve the preliminary injunction is DENIED.

The Clerk of Court is directed to close the motion at ECF No. 101.

SO ORDERED.

Dated: June 10, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge